[Cite as *State v. Bedell*, 2018-Ohio-721.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160911 |
| | | TRIAL NO. B-1600504 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| CHRISTOPHER BEDELL, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Sentences Vacated, and Cause Remanded for Resentencing

Date of Judgment Entry on Appeal: February 28, 2018

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Roger W. Kirk*, for Defendant-Appellant.

**CUNNINGHAM, Judge.**

{¶1} Defendant-appellant Christopher Bedell appeals his convictions for gross sexual imposition. Bedell challenges the sufficiency and weight of the evidence to support his convictions, raises claims of prosecutorial misconduct and ineffective assistance of trial counsel, and argues that his sentences were erroneous. Because Bedell demonstrated plain error resulting from the trial court's consideration of an incorrect sentencing range when determining his sentences, we vacate the sentences and remand for further proceedings. In all other respects we affirm.

## I. Background Facts and Procedure

{¶2} On May 7, 2015, nine-year-old M.S. and her younger sister T.S. were living with Bedell, who was their legal custodian. Bedell's wife, Twayna, also lived with them. That morning, the girls were getting dressed for school after Twanya had left for work. M.S. asked Bedell for assistance "snapping" her bra, which closed in the back. Bedell put his hands down M.S.'s pants and inside her underwear, and rubbed her vagina. When M.S. told him that she needed to finish getting ready for school, he asked her if she wanted him to pick her up from school early so they "could have a little drinky drink and have some fun." M.S. told him "no" and reminded him that she had after-school choir practice that day.

{¶3} M.S. and T.S. then walked to their neighborhood elementary school. Later that morning, M.S. appeared unusually "sad and quiet" during her weekly individual therapy session with Jamie Baxter, who had been assigned to provide M.S. with community-health school-based services for symptoms of Attention Deficit/Hyperactivity Disorder. When Baxter asked M.S. what was wrong, M.S. told her what had happened at home. M.S. also revealed to Baxter other instances when Bedell's hand had touched her "privates."

{¶4}     After Baxter contacted the relevant authorities, Megan Foley of the Mayerson Unit at the Hamilton County Department of Job and Family Services was assigned to investigate the allegations.  Foley responded to M.S.'s school that same day and spoke with M.S. in Baxter's office about her home life.  According to Foley, M.S. told her that Bedell had groped her "private parts" that morning while helping her put on her bra and had digitally penetrated her.  M.S. also conveyed concern that Bedell was going to pick her up early from school and do it again.  M.S. told of other instances when Bedell had had sexual contact with her, including when helping her with her bra and when she was laying on his bed watching a movie.

{¶5}     Foley took both M.S. and T.S. to be examined at Children's Hospital. At Children's, M.S. was interviewed by Beth Hutson, a social worker in the emergency department.  Hutson recalled that M.S. was shaking during the interview. Among other things, M.S. told Hutson that in the morning Bedell had touched her all over, had put his hand or part of his hand into her vagina, and had licked and kissed her butt.  M.S. said she did not want to return to his home and was concerned that Bedell wanted to "drink" with her and "do it" after school.

{¶6}     Later that same day, M.S. was examined by an emergency room physician and a pediatric sexual assault nurse examiner, who swabbed M.S.'s back when compiling a sexual assault evidence kit.  M.S. and her sister did not return to Bedell's home and were placed with a foster family.

{¶7}     About three weeks later, Andrea Richey, a social worker with Children's Hospital, conducted a forensic interview with M.S.  At that time, M.S. indicated that on May 7, when she had asked him to help her with her bra, Bedell had touched her all over her body with his hand, including touching her inside her "body part"—meaning her vagina.  M.S. also recalled that Bedell had told her he was going

to pick her up early from school that day so that they could "do it," which to her meant the same type of conduct. M.S. accused Bedell of one time touching her "body part" with his "body part." She also described Bedell as "mean" because he hit her and her sister.

{¶8} Cincinnati Police Detective Hollis Hudepohl interviewed Bedell with his attorney on June 18, 2015. While Bedell did not make any incriminating statements as to committing sexual acts, he confirmed that he had helped M.S. with her bra in the mornings and that he had given her malt liquor in the past "to let her taste it hoping she wouldn't like it." In response to the detective's inquiry about whether his DNA would be found on M.S.'s body, Bedell informed him that it was possible that his nose may have touched her on the morning of May 7 when he checked to make sure she was not "dirty or smelly." But ultimately Bedell's DNA was not found on M.S.'s body.

{¶9} Later, Bedell was indicted on two counts of rape and two counts of gross sexual imposition involving M.S. The case proceeded to a bench trial. The trial court granted Bedell's Crim.R. 29 motion with respect to the rape charges after M.S. did not testify to any vaginal penetration. After the state rested, Bedell did not present any testimony, but he did move into evidence a note M.S. had written to Twanya, whom she addressed as "mom." In the note, M.S. apologized to Twanya for lying about taking a cookie, and told her that she "love[d]" her.

{¶10} The trial court found Bedell guilty on both counts of gross sexual imposition and proceeded to sentence him without delay. Just before the court announced Bedell's sentences of concurrent 36-month prison terms, the prosecutor confirmed for the trial court that the sentencing range for the offense was "36 months to 60 months."

## II. Analysis

{¶11}  In his second assignment of error, which we address first, Bedell contends that his convictions were not supported by sufficient evidence.  This court's inquiry when reviewing a claim of insufficient evidence "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶12}  Bedell was convicted on two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4).  To prove these charges, the state had to show Bedell had "sexual contact" with M.S. on at least two occasions when she was less than 13 years old.  " 'Sexual contact'  means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttocks, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶13}  At trial, M.S. unequivocally explained how Bedell had put his hands inside her underwear and rubbed her vagina on the morning of May 7, 2015, when she was nine years old.  She further indicated that he had engaged in similar conduct on previous occasions and had also previously rubbed her thighs and breasts. Despite the lack of any physical evidence to corroborate M.S.'s testimony, this testimony was sufficient evidence to demonstrate that Bedell had two separate and distinct sexual contacts with M.S. when she was under the age of 13, as charged by the state.

{¶14}   Next Bedell claims his convictions were against the weight of the evidence. Bedell argues that M.S. had a "total failure of credibility" because her testimony at trial conflicted in part with other witnesses' recollections of M.S.'s statements to them during the investigation.  For example, Hutson testified that M.S. had told her that she had been "raped" by her mother's boyfriend when she was four and that Bedell was doing the same thing to her.  And when Hutson asked M.S. about the incident on the morning of May 7, M.S. indicated she had been wearing a towel, which conflicted with M.S.'s testimony at trial that she had been wearing pants. Further, while M.S. did not testify to any vaginal penetration or penile-vaginal contact—just the "rubbing" of her vagina when his hands were inside her underwear—Foley, Hutson, and Richey all testified M.S. had told them that Bedell's hand or part of his hand had entered her vagina on May 7, and that on at least one occasion there had been penile-vaginal contact.

{¶15}   Bedell contends also that M.S. wanted to live with her grandparents, and this desire was strong proof she fabricated the instances of sexual abuse so she would be removed from Bedell's home.   In support, Bedell cites M.S.'s testimony that she would like to live with her grandparents.   He cites also Richey's testimony that M.S. had expressed a desire to live with her grandparents during the interview on May 26, 2015, which occurred after M.S. had been placed in a foster home.

{¶16}   In determining whether the judgment of conviction is against the manifest weight of the evidence, "th[is] court, reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175,

485 N.E.2d 717 (1st Dist.1983), quoted in *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶17}   Upon our review of the entire record, we hold there is no basis to conclude that the trial court lost its way and created a manifest miscarriage of justice in resolving the factual issues against Bedell.  M.S. was thoroughly cross-examined on the sexual contact on May 7, 2015, and on the earlier days.  She did not waiver in her testimony, and this testimony was entirely consistent with her disclosure to Baxter shortly after the sexual contact.  This initial disclosure occurred closest to the abuse and was precipitated by an inquiry by Baxter, who had noticed M.S.'s unusual demeanor during their counselling session.  Moreover, at trial, M.S. denied having an ulterior motive for disclosing the abuse that led to her removal from Bedell's home, explaining that she liked living with Twanya, Bedell's spouse.  Ultimately, the trial court was in the best position to determine the credibility of the witnesses and to determine what weight to give the evidence.  *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶18}   Because the record demonstrates that Bedell's convictions were supported by sufficient evidence and were not against the weight of the evidence, we overrule the second assignment of error.

{¶19}   In his first assignment of error, which we address next, Bedell argues that misconduct by the prosecutor resulted in a denial of his right to a fair trial. Specifically, he contends the prosecutor committed misconduct by asking leading questions of state witnesses.  To evaluate the claim, we must determine whether the prosecutor's conduct was improper and whether Bedell was denied a fair trial as a result.  *See State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 257.  The "touchstone" of the analysis "is the fairness of the trial, not the culpability

of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶20} Leading questions, which suggest the examiner's desired answer to the witness, "should not be used on the direct examination of a witness except as may be necessary to develop the witness's testimony." Evid.R. 611(C). Although Bedell cites to transcript page numbers in his brief, he does not otherwise identify the questions he contends were improperly leading, and he fails to articulate how he was prejudiced by this questioning. Further, during the trial, counsel did not object to any question on the referenced pages on the ground that it was a leading question. Thus, Bedell forfeited all but plain error with respect to the challenged questioning. Because Bedell failed to analyze the propriety of specific questions or explain how they prejudiced him, we reject his claim of prosecutorial misconduct, *see McKelton* at ¶ 264, including misconduct that resulted in plain error, *see State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Accordingly, we overrule his first assignment of error.

{¶21} In his third assignment of error, Bedell contends that he was denied the effective assistance of trial counsel. To disturb a conviction based on such a claim, Bedell must prove that counsel violated an essential duty to him and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Prejudice to the defendant results when there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Bradley* at 142, quoting *Strickland* at 694.

{¶22} When reviewing an ineffective-assistance-of-counsel claim, "a court need not determine whether counsel's performance was deficient before examining

8

the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, citing *Strickland* at 697. Here, Bedell has failed to show any prejudice.

{¶23} Bedell argues that counsel was ineffective for not objecting to the prosecutor's questioning on the ground that it was improperly leading. But in support of this claim, Bedell presents no more than the nonspecific, conclusory assertions that we have already held, in response to the first assignment of error, were insufficient to support a claim of prosecutorial misconduct. Thus, Bedell has failed to demonstrate the result of the trial would have been different had counsel objected.

{¶24} Bedell claims also that trial counsel was ineffective for failing to renew his Crim.R. 29 motion to acquit for lack of sufficient evidence on the gross-sexual-imposition charges at the end of the defense's case. But the motion would have been overruled because, as we have already held, in response to the second assignment of error, the evidence was sufficient to support the gross-sexual-imposition charges.

{¶25} Finally, Bedell contends that counsel was ineffective for failing to request a presentence investigation ("PSI") before sentencing. The record, however, does not indicate how a PSI would have helped Bedell, as the parties agreed at the sentencing hearing that Bedell had no prior offenses, and defense counsel presented evidence in mitigation at that time. As a result, Bedell cannot show that he was prejudiced by any allegedly deficient performance by counsel.

{¶26} Because Bedell's ineffective-assistance-of-counsel claim is meritless, we overrule the third assignment of error.

{¶27} In his fourth assignment of error, Bedell challenges his sentences. The trial court imposed concurrent 36-month prison terms, in addition to classifying Bedell as a Tier II sex offender/child victim offender.

{¶28} This court reviews sentences under the standard of review set forth in R.C. 2953.08(G)(2). Under that standard, we may modify or vacate Bedell's sentence only if we clearly and convincingly find that the record does not support the trial court's findings or that the sentence is contrary to law. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231; *State v. White*, 2013-Ohio-4225, 997 N.E.2d 629 (1st Dist.).

{¶29} Bedell first argues that the court's imposition of any prison term, instead of community control, was the result of the trial court's failure to "adequately" consider the sentencing factors set forth in R.C. 2929.11 and 2929.12. He contends that prison was not warranted where there was no physical injury to the victim and where he had an exemplary background, including no prior convictions. But the trial court is not required to note its consideration of all the sentencing factors, and this court can presume that the court did consider all of the appropriate factors when determining that prison was appropriate where, as here, nothing in the record rebuts that presumption. *See State v. Kennedy*, 2013-Ohio-4221, 998 N.E.2d 1189, ¶ 118 (1st Dist.).

{¶30} Next Bedell argues that his sentences were contrary to law because the trial court applied an incorrect sentencing range when determining the appropriate prison sentence. He explains that a violation of R.C. 2907.05(A)(4) is a third-degree felony offense that subjects a violator to a prison term of 12 to 60 months. *See* R.C. 2907.05(C)(2) ("Gross sexual imposition committed in violation of [R.C. 2907.05(A)(4)] is a felony of the third degree"); R.C. 2929.14(A)(2) ("* * * For a

10

felony of the third degree that is a violation of * * * R.C. 2907.05 * * *, the prison term shall be twelve, eighteen, twenty-four, thirty, thirty-six, forty-two, forty-eight, fifty-four, or sixty months"). Notwithstanding the law, Bedell contends that at sentencing, the trial court deemed applicable an incorrect, higher range of 36 to 60 months and then imposed the minimum term within that incorrect, higher range.

{¶31} While Bedell now argues that the trial court used an erroneous range when determining his sentences, he did not call the error to the attention of the sentencing judge. Therefore, he forfeited all but plain error. Under the authority of Crim.R. 52(B), this court has "discretion to correct '[p]lain errors or defects affecting substantial rights' notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, quoting Crim.R. 52(B).

{¶32} The burden of demonstrating plain error rests with the appellant. *Id.*, citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16. This entails demonstrating "an error, i.e., a deviation from a legal rule" that constituted "an 'obvious' defect in the trial proceedings." *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), quoted in *Rogers* at ¶ 22. And the obvious error must have affected the appellant's substantial rights, meaning that "the trial court's error must have affected the outcome of the trial." *Id.* To meet this burden, the appellant must "demonstrate a reasonable probability that the error resulted in prejudice." *Rogers* at ¶ 22.

{¶33} Notice of plain error under Crim.R. 52(B) is to be taken "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long,* 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus. If the conditions to establish the plain error have been met, an

appellate court should exercise its discretion to correct the error if it " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " (Internal citations omitted.) *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), cited in *Barnes* at 27; *Molina-Martinez v. United States*, ___ U.S. ___, 136 S.Ct. 1338, 1343, 194 L.Ed.2d 444 (2016), quoting *Olano*.

{¶34}    Here, the state does not contradict Bedell's assertion that the trial court erroneously applied a sentencing range of 36 to 60 months when sentencing him.  And, on the record before us, we conclude the only reasonable interpretation of the court's comments at sentencing is the one presented by Bedell.

{¶35}    The transcript of the proceedings indicates that the trial court proceeded directly to sentencing after finding Bedell guilty.  At that time, defense counsel presented mitigating facts and asked the court to give Bedell credit for the 303 days that he had served, which defense counsel incorrectly characterized as "more than what the minimum sentence would be for the offense" of gross sexual imposition.  The prosecutor then addressed the court and requested prison time, a request supported by a statement from the victim's grandfather.  Next, Bedell and his father addressed the court and both proclaimed Bedell's innocence.  The following then transpired with respect to Bedell's sentencing:

> The court: In considering the purposes and principles of sentencing, I recognize that the statute provides that in this case, there's a presumption of prison.  In the event there was corroboration there would be mandatory prison time.  But the evidence didn't show, to my determination, that there was corroboration. Considering other factors, the injury to—in this case was exacerbated by the age of the victim and also by the offender's relationship to the victim and his duty

12

to protect and safeguard this child. I also recognize that there are—he has no prior convictions. Does the state confirm that?

The prosecutor: That's correct, Judge.

The court: And it appears he has lived to this—up to this time and aside from what we know in this case a law-abiding life. Doesn't seem to show remorse and continues to deny the offense. Considering there's two counts here I've also considered whether or not it would be appropriate for consecutive sentences. And it's my finding that the factors for consecutive sentences do not exist. Therefore, as to Count 2, wherein the charge is gross sexual imposition and Court 4, wherein the charge is gross sexual imposition, in both cases felonies of the third degree—and counsel, it's my understanding that it's the higher level of the sentencing range? Am I correct?

The prosecutor: Yes.

The defense counsel: Correct. 60 months.

The court: We're talking 36 months to 60 months, correct?

The prosecutor: Yes.

The court: It's the sentence of the Court that the defendant serve a period of 36 months at the Ohio Department of Corrections as to each count. Those sentences can be served concurrently. I will credit time served. Have we calculated that?

The baliff: 302.

The court: Credit 302 days served at the Hamilton County Justice Center.

{¶36} In summary, when announcing its sentencing decision, the court expressly and correctly referred to the fact that the offenses Bedell committed fell within "the higher level of the sentencing range" for third-degree felonies. Although the court did not repeat the word "range," the court next asked, "We're talking 36 to 60 months, correct?" and the prosecutor replied "correct."

{¶37} The court misunderstood the sentencing range, however, because the sentencing range it inquired about for high-tier third-degree felonies is 12 to 60 months, and the range for low-tier third-degree felonies is 9 to 36 months. And without a correction of this misunderstanding, the court immediately imposed the concurrent 36-month prison terms that Bedell now challenges. This record, therefore, unequivocally demonstrates the sentencing judge misunderstood the applicable sentencing range for the offense and sentenced Bedell with that misunderstanding.

{¶38} On the state of this record, including the timing of the court's challenged comments, we are unable to concur with the dissent's suggestion that the judge was merely expressing his intent to sentence within the higher level of the appropriate sentencing range when he asked, "We're talking 36 months to 60 months, correct?" Instead, we conclude that Bedell has demonstrated an obvious error by the trial court in the proceedings below.

{¶39} Bedell argues that he was prejudiced by this error because the trial court selected the minimum term from the erroneous, higher range when sentencing him.

{¶40} When analyzing Bedell's claim of prejudice, we are mindful that, under Ohio's sentencing framework, the sentencing range mandated by statute is the starting point for sentences involving prison terms. *See* R.C. 2929.14(A) and

2929.13(A). Logically, therefore, the sentencing court's mere use of an incorrect, higher range would typically demonstrate prejudice to the defendant, even though the ultimate sentence fell within the correct range. *See, e.g., Molina-Martinez* at 1345 (**rejecting** a requirement that a petitioner sentenced under an incorrect-but-unobjected-to sentencing guideline range, but whose sentence was also within the correct range, must identify additional evidence to show that his sentence would be different absent the clear error).

{¶41} While not required to do so to, Bedell additionally showed that the trial court imposed the minimum term within that incorrect, higher range. The state does not present an argument to counter Bedell's showing of prejudice. Thus, on this record, we hold that Bedell demonstrated a reasonable probability that the sentencing court would have imposed a different, lower sentence if the court had applied the correct sentencing range. Therefore, we conclude that Bedell met his burden of establishing that the obvious error affected his substantial rights. We do not determine, as represented by the dissent, that the trial court in fact intended to impose a minimum prison term, only that Bedell met the standard required to establish prejudice under plain-error analysis.

{¶42} Finally, we conclude that this obvious error affecting Bedell's substantial rights impugns the integrity of the judicial process and is one that should be corrected at resentencing. *See, e.g., United States v. Sabillon-Umana*, 772 F.3d 1328, 1333 (10th Cir.2014) ("[W]e can think of few things that affect an individual's substantial rights or the public's perception of the fairness and integrity of the judicial process more than a reasonable probability an individual will linger longer in prison than the law demands only because of an obvious judicial mistake [involving the application of an incorrect advisory guidelines range]").

**{¶43}** Thus, here, the court's application of an incorrect, higher sentencing range rose to the level of plain error that must be corrected.  For these reasons, we sustain the fourth assignment of error.

### III. Conclusion

**{¶44}** Accordingly, the trial court's imposition of concurrent 36-month prison terms is vacated and the cause is remanded for resentencing in accordance with the law and this opinion.  In all other respects, we affirm the trial court's judgment.

*Judgment accordingly.*


**ZAYAS, J.**, concurs.
**MOCK, P.J.**, concurs in part and dissents in part.


**MOCK, P.J.,** concurring in part and dissenting in part**.**

**{¶45}** After a review of the record, I cannot agree that the trial court's statement "[w]e're talking 36 months to 60 months" amounts to plain error.  I agree with the majority in all other respects.

**{¶46}** Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21.  The accused must demonstrate plain error on the record—showing "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings." *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).  But even if the error is obvious, it must have affected substantial rights, and must have affected the outcome of the trial. *Id.*  The accused is therefore required to demonstrate a reasonable probability that the error resulted in prejudice—the same deferential standard for

reviewing ineffective assistance of counsel claims. *Rogers*, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

{¶47} But even if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; we have "admonish[ed] courts to notice plain error 'with the utmost caution, *under exceptional circumstances and only to prevent a manifest miscarriage of justice.*' " (Emphasis added.) *Rogers* at ¶ 23, citing *Barnes* at 27.

{¶48} In this case, I do not believe that the only fair reading of the transcript of the sentencing hearing is one that concludes that the trial court did not understand the range of available sentences for Bedell in this case. During the sentencing hearing, defense counsel said that "[h]e has been incarcerated for - - at this point about 303 days. * * * I'd ask the court to take into consideration he has served more than what the minimum sentence would be for the gross sexual imposition charge and to allow him to have credit for time served for what the Court has found him guilty of." The state then indicated that it was "asking for prison time."

{¶49} The trial court then said that

[i]n considering the purposes and principles of sentencing, I recognize that the statute provides that in this case there's a presumption of prison. In the event that there was corroboration there would have been mandatory prison time. But the evidence did not show, to my determination, that there was corroboration. Considering other factors, the injury to - - in this case was exacerbated by the age of the victim and also by the offender's relationship to the victim and his duty to protect and safeguard this child.

17

And while the trial court recognized that this was his first offense, the court also noted that Bedell

> [didn't] seem to show any remorse and continues to deny the offense. *
> * * Therefore, as to Count 2, wherein the charge is gross sexual imposition and Count 4, wherein the charge is gross sexual imposition, in both cases felonies of the third degree - - and, counsel, it's my understanding that it's the higher level of the sentencing range? Am I correct?

When the state responded in the affirmative, and defense counsel said "[c]orrect - - 60 months." The trial court said "[w]e're talking 36 to 60 months," to which the state responded "correct" and defense counsel was silent. The trial court concluded that "[i]t's the sentence of the Court that the defendant serve a period of 36 months at the Ohio Department of Corrections as to each count. Those sentences can be served concurrently. I will credit time served."

{¶50} The majority makes two observations with which I cannot agree. First, the majority says that "the trial court committed an obvious error when it applied a sentencing range of 36 to 60 months in determining Bedell's sentences, contrary to the provisions set forth in the sentencing statutes." The majority also concludes that "Bedell additionally showed that the trial court imposed the minimum term within the correct, higher range," making the assumption that the trial court had intended to impose a minimum sentence and did so within a range it incorrectly believed had applied.

{¶51} "A reviewing court must presume that the trial court applied the law correctly." *State v. Coombs*, 18 Ohio St.3d 123, 125, 480 N.E.2d 414 (1985), citing *State v. Eubank*, 60 Ohio St.2d 183, 398 N.E.2d 567 (1979). This is especially true in

18

the context of plain error, where—as here—a misstatement or ambiguous comment could have been addressed at the time in such a way that the misstatement or ambiguity could have been corrected.

{¶52}   In beginning to analyze the issue, I start with the observation that there is nothing in the record to support the conclusion that the trial court intended to give the minimum possible sentence.  First, the trial court obviously never actually *said* it wanted to impose the minimum sentence.  Second, when considering the sentencing factors, the trial court first noted that the victim's injury was exacerbated by her age and that Bedell's relationship with the victim facilitated the offense.  Both are factors that indicate "that [Bedell's] conduct [was] more serious than conduct normally constituting the offense."  *See* R.C. 2929.12(B).  Additionally, the trial court found that Bedell showed no genuine remorse, indicating that he is more likely to reoffend.  *See* R.C. 2929.12(D).  The only sentencing factor in Bedell's favor was the fact that Bedell had no previous criminal record.  *See* R.C. 2929.12(E).  These findings do not lend themselves to the conclusion that the trial court had intended to impose the minimum sentence.

{¶53}   Additionally, while the trial court's statement "it's my understanding that it's the higher level of the sentencing range" and "[w]e're talking 36 to 60 months" could be read as the trial court misunderstanding the applicable sentencing range, it could also be read—in light of the trial court's sentencing determinations— that it intended to sentence within the higher level within the sentencing range.  In this context, it is noteworthy that defense counsel had initially suggested that Bedell be sentenced to time served for the offense.  Having heard that, and knowing that Bedell had served less than a year awaiting trial, the record contains some indication that the trial court had been made aware that the minimum sentence was not 36

months. Additionally, defense counsel did not say anything to correct the trial court when it said "[w]e're talking 36 to 60 months," which may indicate that the parties involved had a different understanding of what the trial court was saying than the majority has surmised.

{¶54} In this case, the record is susceptible to more than one interpretation. Therefore, I would conclude that Bedell has failed to demonstrate that there is an "obvious" defect in the proceedings such that this court can find plain error. *See State v. Stojetz*, 84 Ohio St.3d 452, 462, 705 N.E.2d 329 (1999) (finding no plain error, in part, because "the transcript passages at issue are subject to more than one interpretation"—one indicating error and the other indicating no error). As a result, I would overrule all assignments of error and affirm the judgment of the trial court.

Please note:

The court has recorded its own entry on this date.