**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHN DAMION RAFAL,

    Defendant - Appellant.

No. 17-4107
(D.C. No. 2:16-CR-00413-CW-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **PHILLIPS**, **EBEL**, and **MORITZ**, Circuit Judges.

_____

John Rafal robbed a bank. After being indicted, he pleaded guilty to one count

of bank robbery, _see_ 18 U.S.C. § 2113(a), and one count of being a felon in

possession of a firearm, _see_ 18 U.S.C. § 922(g)(1). The district court sentenced Rafal

to serve a total of 70 months in prison, the low end of the advisory guideline range of

70 to 87 months.

In this appeal, Rafal challenges that sentence. He argues that the district court

plainly erred by calculating his guideline sentencing range without grouping his two

counts of convictions. _See_ U.S. Sentencing Guidelines Manual (U.S.S.G.) §§ 3D1.1–

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1.5 (U.S. Sentencing Comm'n 2016) (guiding the sentencing of defendants convicted of multiple counts). We agree. So exercising jurisdiction under 28 U.S.C. § 1291, we vacate Rafal's sentence and remand for resentencing.

## BACKGROUND

On July 25, 2016, Rafal robbed a bank in Salt Lake City, Utah. After Rafal left, bank employees began yelling about the robbery. Minutes after the robbery, a police officer encountered Rafal about a block from the bank and arrested him. During the arrest, the officer discovered that Rafal was carrying a loaded firearm.

On August 24, 2016, a federal grand jury indicted Rafal on two counts: bank robbery, *see* 18 U.S.C. § 2113(a), and being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1). Rafal pleaded guilty to both counts. But Rafal had been serving a sixty-month term of supervised release (part of his sentence for an earlier bank-robbery conviction) at the time of the robbery. His latest bank robbery obviously violated the terms of his supervised release.

Before Rafal's sentencing hearing, a probation officer prepared a presentence investigation report (PSR). In calculating Rafal's offense level for the bank-robbery count, the probation officer applied a base offense level of 20. *See* U.S.S.G. § 2B3.1(a). Then she turned to specific-offense characteristics, adding two levels because Rafal had taken the property of a financial institution, *see* U.S.S.G. § 2B3.1(b)(1), plus five more levels because "a firearm was brandished or possessed" during the robbery, *see* U.S.S.G. § 2B3.1(b)(2)(C). This calculation yielded an adjusted offense level of 27 for the bank-robbery count. For the felon-in-possession-

2

of-a-firearm count, the officer used a base offense level of 20, *see* U.S.S.G. § 2K2.1(a)(4)(A), and added two levels because the firearm was stolen, *see* U.S.S.G. § 2K2.1(b)(4)(A), resulting in an adjusted offense level of 22.

Then the probation officer took the greater of the adjusted offense levels—27 for the bank robbery—and applied a multiple-count adjustment. In doing so, she assigned each offense to a separate "group." From that, she allotted the bank-robbery group 0.5 "units" and the felon-in-possession-of-a-firearm group 1 "unit," for a total of 1.5 units. The additional 1.5 units increased the adjusted offense level by one, resulting in a combined adjusted offense level of 28. After subtracting three levels for acceptance of responsibility, the officer arrived at a total offense level of 25, which, combined with Rafal's criminal history category of III, produced a guideline sentencing range of 70 to 87 months' imprisonment.

At sentencing, Rafal objected to the five-level increase applied to the bank-robbery count, arguing that the government hadn't established that he possessed the gun during the robbery. The district court allowed testimony to resolve the objection. An investigating officer testified that video footage from the bank showed a bulge on Rafal's right hip that appeared to be a firearm. Another officer testified that he saw a firearm on Rafal's right hip as he approached Rafal soon after the bank robbery. The district court found that "the evidence preponderates in favor of a conclusion that the defendant did possess a firearm during the robbery." R. vol. 2 at 7:17–19. So the court denied Rafal's objection to the five-level increase and accepted the PSR's sentencing calculations.

From there, the district court identified "two ways to proceed." *Id.* at 16:19. First, the district court noted that it could "sentence Mr. Rafal to 80 months in prison and dismiss the supervised release violations." *Id.* at 16:20–21. Second, it could "sentence him to 70 months in prison, which would be the low end of the Guideline for the two counts in the [bank-robbery] case, and sentence him to 30 months on the supervised release, with 20 of those months to run concurrent with the sentence in the bank robbery case." *Id.* at 16:23–17:3. Both approaches would yield an 80-month sentence. Ultimately, the district court concluded that it was "more appropriate for the record to reflect that there was a sentence imposed for the supervised release violation," so it chose the second option. *Id.* at 17:4–6. For the two instant convictions, the court sentenced Rafal to 70 months' imprisonment. For the supervised-release violation, the court sentenced Rafal to 30 months' imprisonment—10 to be served consecutively, and 20 to be served concurrently. Rafal appealed his sentence.

## DISCUSSION

On appeal, Rafal argues that the district court plainly erred in calculating his guideline sentencing range by treating Rafal's conviction for bank robbery and his conviction for being a felon in possession of a firearm as separate groups.

Because Rafal didn't contemporaneously object to the district court's guideline calculation, we review his claims for plain error. *United States v. Archuleta*, 865 F.3d 1280, 1290 (10th Cir. 2017). "We will find plain error only when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects

4

the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting

*United States v. Wireman*, 849 F.3d 956, 962 (10th Cir. 2017)).

## I. The District Court Erred in Not Grouping Rafal's Two Counts of Conviction

When a defendant is convicted of multiple counts, the sentencing guidelines

provide rules for grouping the offenses together "to limit the significance of the

formal charging decision and to prevent multiple punishment for substantially

identical offense conduct." U.S.S.G. ch. 3, pt. D, introductory cmt.

Counts must be grouped when they involve "substantially the same harm." *Id.*

at § 3D1.2. One way that counts can involve substantially the same harm is "[w]hen

one of the counts embodies conduct that is treated as a specific offense characteristic

in, or other adjustment to, the guideline applicable to another of the counts." *Id.* at

§ 3D1.2(c). The sentencing guidelines address the situation presented here in an

application note, stating that "use of a firearm in a bank robbery and unlawful

possession of that firearm are sufficiently related to warrant grouping of counts under

this subsection." *Id.* at § 3D1.2 cmt. n.5; *see also United States v. Gelzer*, 50 F.3d

1133, 1144 (2d Cir. 1995) ("[T]he unlawful possession of a firearm is grouped with

armed robbery because the conduct embodied in possessing a firearm is substantially

identical to the specific offense characteristic of possessing that firearm during a

robbery.").

Section 3D1.1(a) provides a three-step procedure for calculating the offense

level for multiple counts. *See* U.S.S.G. § 3D1.1(a). First, the district court must group

the counts of conviction "into distinct Groups of Closely Related Counts." *Id.* at

§ 3D1.1(a)(1). Next, the district court must determine the offense level that applies to each group. *Id.* at § 3D1.1(a)(2). Finally, the court must determine the combined offense level. *Id.* at §§ 3D1.1(a)(3). To do so, the court must take the group with the highest offense level and increase that level based on the sum of the "Units." *Id.* at § 3D1.4. The court must count the number of units for each group based on that group's seriousness in relation to the seriousness of the group with the highest offense level. *Id.* So when two counts are grouped together, the punishment for the more serious count absorbs the punishment for the less serious count. But when the counts aren't grouped, the punishment for the less serious count is added to the punishment for the more serious count.

Here, Rafal pleaded guilty to one count of bank robbery, *see* 18 U.S.C. § 2113(a), and one count of being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1). Under U.S.S.G. § 2B3.1(b)(2)(C), the district court applied a five-level enhancement to the bank-robbery count because Rafal possessed a firearm. The felon-in-possession-of-a-firearm count arose from the same possession of the same firearm. Even though the five-level enhancement already punished Rafal for possessing the firearm as a specific offense characteristic of the bank-robbery count, the district court separated the bank-robbery count and the felon-in-possession-of-a-firearm count into two groups.

Because the felon-in-possession-of-a-firearm count embodies conduct that was treated as a specific offense characteristic of the bank-robbery count, we conclude that the district court erred in not grouping Rafal's two counts of conviction.

## II. The Error Was Plain

Next we must decide whether that error was plain. "An error is 'plain' if it is 'clear or obvious' under 'current, well-settled law.'" *United States v. Wolfname*, 835 F.3d 1214, 1221 (10th Cir. 2016) (quoting *United States v. Thornburgh*, 645 F.3d 1197, 1208 (10th Cir. 2011)). Generally, showing that an error is "contrary to well-settled law" requires Supreme Court or Tenth Circuit precedent. *Id.* (quoting *Thornburgh*, 645 F.3d at 1208). But when the explicit language of a statute or rule resolves an issue, that general rule has less force. *See United States v. Edgar*, 348 F.3d 867, 871 (10th Cir. 2003). "[T]he absence of circuit precedent [does not] prevent[ ] the clearly erroneous application of statutory law from being plain error." *United States v. Brown*, 316 F.3d 1151, 1158 (10th Cir. 2003) (second and third alterations in original) (quoting *United States v. Evans*, 155 F.3d 245, 252 (3d Cir. 1998)). When a guideline is "clearly and obviously" limited to a particular interpretation, a contrary district court application can be plain error. *Id.*

Though we haven't directly addressed the issue, U.S.S.G. § 3D1.2 is clear. It states that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group" and that counts involve substantially the same harm "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S.S.G. § 3D1.2. And as mentioned, the guideline's application note specifically addresses Rafal's situation. *See id.* at § 3D1.2 cmt. n.5. So we conclude

that the district court's error in not grouping Rafal's two counts of conviction was plain.

### III. The Error Affected Rafal's Substantial Rights

To satisfy the third prong of the plain-error analysis, Rafal must demonstrate that the error affected his substantial rights, meaning that he must "'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)). "In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome." *Id.* at 1346. We have previously recognized that "the whole point of the guidelines is to affect the defendant's 'substantial rights' by guiding the district court's analysis of how much of his liberty he must forfeit to the government. When the court's starting point is skewed a 'reasonable probability' exists that its final sentence is skewed too." *United States v. Sabillon-Umana*, 772 F.3d 1328, 1333 (10th Cir. 2014) (citing *United States v. Uscanga–Mora*, 562 F.3d 1289, 1295 (10th Cir. 2009)).

Occasionally the application of an erroneous guideline sentencing range will not give rise to "a reasonable probability of prejudice." *Molina-Martinez*, 136 S. Ct at 1346. To refute a defendant's showing of prejudice, the government can point to parts of the record, including the sentencing court's statements. *Id.* at 1347. And a court can make clear that in imposing a sentence, it relied on factors independent of

8

the guidelines. *Id.* at 1346–47. But when "the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights." *Id.* at 1347.

Here, not grouping the two counts of convictions resulted in a one-level increase in Rafal's combined adjusted offense level and a guideline sentencing range of 70 to 87 months' imprisonment rather than 63 to 78 months' imprisonment.

Despite this miscalculation, the government argues that Rafal is unable to show a reasonable probability of prejudice "because the district court expressed its determination to sentence him to 80 months in prison" under two alternatives. Appellee's Response Br. at 8. From there, the government argues that the district court didn't choose a 70-month sentence because it represented the low end of the guideline range. Instead, the government says, the district court chose 70 months with the goal of reaching a total sentence of 80 months' imprisonment for the two counts arising from the bank robbery and the supervised release violation.

But the district court's statements regarding the two alternative approaches to sentencing Rafal aren't sufficient to overcome his showing of prejudice. The district court didn't make any statements about considerations independent of the guidelines, and its reasoning for imposing a total 80-month sentence isn't clear. Though it acknowledged that a 70-month sentence represented the low end of the guideline range for the two counts of conviction arising from the bank robbery, nothing in the record suggests that the court would have added 17 months for the supervised-release

9

violation, rather than 10 months, had it started with 63 months (the low end of the correct guideline range.

Rather, we are faced with a situation much like the one that the Supreme Court faced in *Molina-Martinez*, where the district court "said nothing specific about why it chose the sentence it imposed," adopted the PSR's sentencing calculations, and imposed a sentence at the low end of the miscalculated guideline range. 136 S. Ct. at 1347. In these circumstances, we see a reasonable probability that the district court would have imposed a different sentence under the correct guideline range. *See id.* at 1348. So we conclude that the error affected Rafal's substantial rights.

## IV. The Error Affected the Fairness, Integrity, or Public Reputation of Judicial Proceedings

Finally, Rafal must demonstrate that the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Archuleta*, 865 F.3d at 1290 (quoting *Wireman*, 849 F.3d at 962). "We have adopted a presumption that this question must be answered in the affirmative whenever a defendant has established that an unobjected-to sentencing error affect[ed] his substantial rights." *United States v. Godinez-Perez*, 864 F.3d 1060, 1068 (10th Cir. 2016) (citing *Sabillon-Umana*, 772 F.3d at 1333). When "a court clearly miscalculates the advisory guideline range . . . a defendant's substantial rights and the integrity of the judicial process are surely at risk" because "the benchmark for the entire sentencing process rests on an obviously mistaken premise." *Sabillon-Umana*, 772 F.3d at 1334. But presumptions can be overcome. *Id.* "In some cases, the record will reveal a

10

'fortuitous comment' from the sentencing judge making clear that its error in applying the guidelines didn't adversely affect the defendant's ultimate sentence." *Id.* (quoting *United States v. Knight*, 266 F.3d 203, 207 (3d Cir. 2001)).

Here, the government attempts to overcome this presumption by arguing that "the district court was determined" to sentence Rafal to 80 months' imprisonment and that an 80-month sentence was "appropriate." Appellee's Response Br. at 10. Because the district court could impose the same sentence under the corrected guideline range, the government argues, a remand for resentencing "would likely be an exercise in futility." *Id.*

The government's arguments are insufficient to overcome the presumption that Rafal's sentence—beginning with an erroneous guideline calculation—influenced the fairness, integrity, or public reputation of judicial proceedings. As mentioned, the district court's statements about the two sentencing alternatives didn't establish that it would have imposed 17 additional months for the supervised-release violation had the low end of the advisory guideline been correctly calculated at 63 months. Given the record, we are far from certain that the district court would have imposed an 80-month sentence if beginning at a low-end of 63 months. To ensure that the district court sentences Rafal on the correct information, we remand for resentencing.

11

## CONCLUSION

For these reasons, we vacate Rafal's sentence and remand for resentencing.

Entered for the Court

Gregory A. Phillips
Circuit Judge