[Cite as *State v. Jordan*, 2020-Ohio-4447.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-190453 |
| | | C-190459 |
| Plaintiff-Appellee, | : | TRIAL NO. B-1900390 |
| vs. | : | |
| | | *O P I N I O N.* |
| KENDALL JORDAN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 16, 2020

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ron Springman,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna,* for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} A so-called "sovereign citizen," facing extremely serious charges related to alleged sexual abuse of minors, elected to represent himself at trial. Second-guessing his decision after his conviction, he now appeals, criticizing the court for permitting him to proceed pro se, along with attacking several issues that emerged at trial and sentencing. After reviewing the entire record and his arguments, we see no error in the trial court's decision and we affirm its judgment.

I.

{¶2} In early 2019, defendant-appellant Kendall Jordan was indicted on 12 counts of rape and four counts of gross sexual imposition stemming from allegations of sexual abuse involving four young children. Initial allegations surfaced in 2012 when Mr. Jordan's daughter (I.J.) and his then-girlfriend's daughter (A.M.) came forward with allegations of abuse. A series of unexpected events, including retirement of the investigating officer, prevented these allegations from receiving full attention until 2018, when two other children (S.M. and K.E.) stepped forward with their own allegations of abuse at the hands of Mr. Jordan. These new accusations rekindled interest in the earlier investigation regarding I.J. and A.M., and upon re-interviews of them both, A.M. provided additional disclosures of abuse. The culmination of these disclosures resulted in Mr. Jordan's indictment and eventual trial on the allegations of all four children.

{¶3} Before trial, the court appointed Mr. Jordan counsel, but this relationship became fraught with difficulties as he refused to assist his attorney. Over the course of several pretrial proceedings, the trial court ultimately determined that Mr. Jordan wished to proceed pro se in the case, and it designated his former counsel as standby counsel. At trial, Mr. Jordan presented his own defense,

including cross-examining witnesses, interposing objections, calling his own witness, and tendering an exhibit.

{¶4} Once the trial concluded, the jury found Mr. Jordan guilty of all 16 counts in the indictment. The trial court subsequently handed down its sentence, imposing 15-year-to-life sentences on each of the 12 rape convictions, to run consecutively, and five years each on the four gross sexual imposition convictions, to be served concurrently to his sentences for the rape convictions. This resulted in an aggregate sentence of 180 years to life.

{¶5} Mr. Jordan now appeals, raising five assignments of error. First, he challenges the trial court's allowing him to represent himself because he never properly waived his right to counsel. He also contends that his Confrontation Clause rights were violated, presents challenges to the sufficiency and weight of the evidence against him, and finally maintains that his sentences constituted cruel and unusual punishment. We examine these points in turn.

II.

A.

{¶6} Under his first assignment of error, Mr. Jordan maintains that he never properly waived his right to counsel in violation of his constitutional rights. A criminal defendant's right to counsel is guaranteed under the Sixth Amendment to the United States Constitution and Article 1, Section 10, of the Ohio Constitution. Correlative to this right is the criminal defendant's right to represent one's self. *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 23; *State v. Jackson*, 1st Dist. Hamilton No. C-180160, 2019-Ohio-2933, ¶ 10 (noting that defendant had constitutional right to represent himself pro se). Denial of either of these rights may result in structural error, warranting reversal. *See State v. Furr,* 1st Dist. Hamilton No. C-170046, 2018-Ohio-2205, ¶ 3-4.

3

{¶7}    A criminal defendant may waive his or her Sixth Amendment right to counsel so long as the waiver occurs knowingly, intelligently, and voluntarily. *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (the choice to relinquish counsel should be made with "eyes open"); *Martin* at ¶ 24 (noting that criminal defendants have constitutional right to self-representation and may do so where done voluntarily, knowingly, and intelligently).   Crim.R. 44 spells out the procedure for waiver of counsel in cases of "serious offenses," which includes felonies (*see* Crim.R. 2(C)).   Crim.R. 44(A) explains that a defendant is entitled to counsel in serious offense cases, unless after being advised of the right, the defendant knowingly, intelligently, and voluntarily waives it.   Additionally, Crim.R. 44(C) requires that the waiver "shall be in open court * * * [i]n addition, in serious offense cases the waiver shall be in writing."

{¶8}    The writing requirement of Crim.R. 44(C) is not constitutionally ordained, however, and thus appellate courts will uphold waivers so long as the trial court "substantially complies" with the requirements of Crim.R. 44(A), ensuring an appropriate waiver of the right to counsel.  *Martin* at ¶ 39 ("[T]he trial court must demonstrate substantial compliance with Crim.R. 44(A) by making a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel.").   We find substantial compliance with Crim.R. 44(A) where the trial court undertakes a sufficient inquiry into whether the defendant fully understood and intelligently relinquished the right to counsel. *Id.* This requires that the trial court "adequately explain the nature of the charges, the statutory offenses included within them, the range of allowable punishments, possible defenses, mitigation, or other facts essential to a broad understanding of the whole matter." *Id.* at ¶ 43, citing *Von Moltke v. Gillies*, 322 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948), and *State v. Gibson*, 45 Ohio St.2d 366, 377, 345 N.E.2d

399 (1976). We conduct review de novo of the issue of whether a defendant properly waived the right to counsel. *Furr* at ¶ 10.

{¶9} In the present case, Mr. Jordan was initially appointed counsel, but trial counsel bemoaned his refusal to cooperate in preparing for trial. Concerned over this behavior, the trial court ordered his competency evaluated, but Mr. Jordan established his competency during this scrutiny. Over the course of several pretrial appearances, the trial court attempted to ascertain whether Mr. Jordan wanted counsel to represent him or proceed pro se. When probed on the matter, however, Mr. Jordan, as best we can tell invoking some version of "sovereign citizen" status, maintained that "due to mistakes and fact of law it's just best I remain quiet," insisted that he wished to "reserve his common law rights under the UCC 1-308," expressed his preference to be called the "beneficiary" (rather than his name) and reiterated that he did not consent to the trial. Interspersed within this gibberish, however, Mr. Jordan left no doubt that he did not consent to counsel's representation of him:

> I do not want [trial counsel] to plead or argue in this case for me. I want him to remain silent.
>
> * * *
>
> I do not want [trial counsel] to plead and argue in this case for me. If he does, he's doing so without my consent and against my will.

{¶10} In light of these parroted responses, refusal to work with appointed counsel and acknowledgement that he had not consented to appointment of counsel, the trial court concluded that Mr. Jordan wished to proceed pro se, but not before taking pains to give him every opportunity to exercise his Sixth Amendment right. In addition, the court walked through the nature of the charges against him, explained

that they constituted felonies, and highlighted the possible punishments available if he were found guilty, including the possibility of life sentences. The trial court also informed Mr. Jordan of his entitlement to have counsel and that the services of an attorney could be of great value. The court emphasized the assistance that an attorney could provide, including presenting possible defenses and challenging the evidence against him. Explaining that Mr. Jordan would be held to the same standards as a represented party and that he lacked the expertise of a lawyer, the court then asked him if, after hearing all the information and the seriousness of the charges against him, he wished to continue without counsel. Mr. Jordan remained unresponsive, repeating many of the same nonsensical answers from before. The trial court then provided him with a copy of the waiver form, which he refused to sign, but maintained that "[f]or the record, I don't want [trial counsel] to plead and argue in this case, I want him to be quiet. If he does have anything to plead and argue in this case * * * he's violating my common law rights."

{¶11} Thus, while Mr. Jordan's waiver does not constitute a textbook illustration of the rule, the trial court bent over backwards to explain everything to him, affording him multiple opportunities to invoke his right to counsel. Sometimes, with "sovereign citizens" who seem to delight in obfuscation, a court can do no more. The record reflects that the trial court engaged Mr. Jordan in a detailed and lengthy explanation regarding what his waiver of counsel entailed, which substantially complied with Crim.R. 44(A). We have similarly upheld waivers in cases involving uncooperative criminal defendants (often imagining themselves some sort of "sovereign citizen") who refuse to properly respond to the waiver inquiry, when the trial court nevertheless engaged in a detailed discussion of the waiver with the defendant. *Compare Furr,* 1st Dist. Hamilton No. C-170046, 2018-Ohio-2205, at ¶ 29 (record reflected that trial court "meticulously and thoroughly" complied with

Crim.R. 44(A)); *State v. Robinson,* 1st Dist. Hamilton No. C-150346, 2016-Ohio-3330, ¶ 23 (trial court complied with Crim.R. 44(A) where it explained the difficulty of self-representation in light of the charges and potential consequences, and emphasized that defendant did not have the skill or expertise of a lawyer) *with State v. Lowe*, 1st Dist. Hamilton No. C-150101, 2016-Ohio-3423, ¶ 16 (no waiver where trial court did not explain the statutory offenses, possible punishments, mitigating factors, or facts pertinent to the case). Moreover, the record reflects that Mr. Jordan consistently refused to work with appointed counsel and emphasized repeatedly that he did not consent to appointment of counsel, and that he did not want counsel to speak for him or plead his case. While waiver of counsel should never be presumed, a defendant may waive his right to counsel through his or her conduct. *State v. Nelson*, 2016-Ohio-8064, 75 N.E.3d 785, ¶ 21, 25 (1st Dist.) (finding that defendant waived the right to counsel through repeatedly rejecting appointed counsel). Therefore, Mr. Jordan's refusal to engage with appointed counsel underscores our determination that he properly waived his right to counsel.

{¶12} The record before us demonstrates that the trial court substantially complied with Crim.R. 44(A) and that Mr. Jordan made his waiver knowingly, voluntarily, and intelligently. The trial court therefore did not violate Mr. Jordan's constitutional right to counsel, and we overrule the first assignment of error.

B.

{¶13} In his second assignment of error Mr. Jordan asserts that the trial court denied him his right to cross-examine a state's witness, painting this as a violation of his Confrontation Clause rights guaranteed by the Sixth Amendment to the United States Constitution. Generally, the Confrontation Clause prohibits " 'testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had * * * a prior opportunity for cross-

examination.' " *State v. Smith*, 2019-Ohio-3257, 141 N.E.3d 590, ¶ 10 (1st Dist.), quoting *Crawford v. Washington,* 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

{¶14} At trial, the state called Emily Harman, a social worker at the Mayerson Clinic, who conducted the girls' 2018 interviews when the 2012 allegations resurfaced. On the stand, the state questioned Ms. Harman regarding why children may disclose more information of abuse at a later date and about the disclosures the girls made during the 2018 interviews. Upon the termination of the state's examination, the following exchange took place:

Prosecutor: Okay. Thank you. Nothing further, your honor.

Court: No? Okay. Step down.

Witness: Thank you.

Court: Thank you.

Mr. Jordan seizes upon this exchange to assert that the trial court denied him the ability to cross-examine Ms. Harman, violating his rights under the Confrontation Clause. But Mr. Jordan never identified any specific statements with which he takes issue, nor did he object or otherwise identify the alleged issue at trial, staying mum as the court excused Ms. Harman. And the record is devoid of any statement on the part of the trial court actually denying Mr. Jordan the opportunity to cross-examine Ms. Harman. As best we can tell, what Mr. Jordan actually complains of is the alleged lack of an affirmative offer by the trial court for cross-examination.

{¶15} While the record is somewhat ambiguous, as the transcript does not indicate to whom the court's "No?" was directed, Mr. Jordan elected to proceed pro se in this matter and therefore was held to the same standards as other represented litigants. *See State v. Ober,* 11th Dist. Portage Nos. 2018-P-0034 and 2018-P-0035, 2019-Ohio-843, ¶ 11-12 (rejecting pro se appellant's claim that his appeal should be

treated as a layman's appeal based on his pro se status). Ultimately, Mr. Jordan was not entitled to special treatment by virtue of his status as a pro se litigant. *See State v. Vaduva*, 2016-Ohio-3362, 66 N.E.3d 212, ¶ 42 (2d Dist.); *State v. Victor*, 11th Dist. Geauga No. 2017-G-0116, 2017-Ohio-8805, ¶ 29 (noting that a pro se litigant is not entitled to special treatment by the court). Moreover, the record confirms that Mr. Jordan understood his right to cross-examine witnesses, having both exercised and declined the right previously during the course of the trial. Based on the record at hand, we see no violation of Mr. Jordan's Confrontation Clause rights.

C.

{¶16} Mr. Jordan next turns to the sufficiency and weight of the evidence underpinning his convictions in his third and fourth assignments of error. Review of a sufficiency of the evidence challenge requires viewing the evidence in the light most favorable to the prosecution and determining whether any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *State v. See*, 1st Dist. Hamilton Nos. C-190251 and C-190252, 2020-Ohio-2923, ¶ 11; *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In contrast, review of a challenge to the weight of the evidence calls for review of the entire record, weighing of the evidence and all reasonable inferences, and consideration of the credibility of the witnesses to determine whether in resolving conflicts in the evidence the trier of facts clearly lost its way, resulting in a manifest miscarriage of justice. *See* at ¶ 26; *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶17} In the present case, Mr. Jordan was convicted of 12 counts of rape in violation of R.C. 2907.02(A)(1)(b), which prohibits "engag[ing] in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies * * * [t]he other person is less than thirteen years of age[.]" The rape counts

in the indictment also contained specifications that the victims were under the age of ten. *See* R.C. 2907.02(B). Mr. Jordan was also convicted of four counts of gross sexual imposition pursuant to R.C. 2907.05(A)(4), which, in pertinent part, prohibits having sexual contact with another, causing another to have sexual contact with the offender, and "caus[ing] two or more other persons to have sexual contact when any of the following applies * * * [t]he other person, or one of the other persons, is less than thirteen years of age[.]"

{¶18} As to the sufficiency of the evidence, Mr. Jordan posits that the lack of corroborating physical evidence coupled with an alleged lack of specificity in the victim's testimony indicates that the prosecution failed to satisfy its burden. At trial, all four children testified as to the abuse perpetrated at Mr. Jordan's hands. The children's testimony chronicled various instances with Mr. Jordan that satisfied the statutory definitions of "sexual conduct" for rape and "sexual contact" for purposes of gross sexual imposition. *See* R.C. 2907.01 (A) and (B).

{¶19} I.J. explained that she began visiting with her father at eight years of age, and when he lived with A.M.'s mother. I.J. testified to being forced to perform fellatio on Mr. Jordan, as well instances of vaginal intercourse and cunnilingus. She also testified to being inappropriately touched by Mr. Jordan while in the shower, witnessing him do the same to A.M., and being forced to touch his genitals. For her part, A.M. indicated that her mother moved in with Mr. Jordan when she was six years old. Her testimony chronicled various sexual activities, as well as digital penetration and vaginal intercourse.

{¶20} The two boys, S.M. and K.E., detailed abuse they suffered at nine years of age. S.M. explained that he and K.E. would go to Mr. Jordan's apartment, where the abuse occurred. S.M. testified to being forced to engage in sexual acts with Mr. Jordan in his bedroom, often with K.E. witnessing. S.M. also testified to instances of

10

digital penetration and fellatio. S.M. explained his fear of disclosing the abuse because Mr. Jordan threatened to harm his mother. K.E. likewise chronicled similar abuse at Mr. Jordan's hands, and both boys testified to an instance when Mr. Jordan forced them to engage in inappropriate touching of each other.

{¶21} The children also offered descriptions of where these instances took place, identifying the location through pictures presented at trial. And although the state presented no physical evidence at trial, in the case of either rape or gross sexual imposition, a victim's testimony suffices to sustain a conviction if believed. *State v. Bedell*, 2018-Ohio-721, 107 N.E.3d 160, ¶ 13 (1st Dist.) (victim's testimony despite absence of physical evidence was enough to sustain conviction for gross sexual imposition); *State v. Whitt,* 5th Dist. Coshocton No. 10-CA-10, 2011-Ohio-3022, ¶ 46 ("Courts have consistently held that testimony, if believed, is sufficient to prove each element of the offense of rape.").

{¶22} Mr. Jordan's challenge on the weight of the evidence revolves around the credibility of the witnesses at trial. Highlighting his own testimony and the testimony of one of the victim's mothers, he attempts to discount the testimony of the children, also pointing to A.M.'s additional disclosures of abuse when reinterviewed in 2018 as additional indicia of a lack of reliability. But ultimately the credibility of the witnesses here was an issue for the trier of fact—the jury in this case—and the jury remained free to find the victims' testimony more credible than that of Mr. Jordan. *See State v. Salaam*, 2015-Ohio-4552, 47 N.E.3d 495, ¶ 14 (1st Dist.); *State v. Hendrix*, 1st Dist. Hamilton Nos. C-150194 and C-150200, 2016-Ohio-2697, ¶ 46 ("Credibility is an issue for the trier of fact."). Based on our review of the record, we also see ample reason for why the jury might doubt Mr. Jordan's credibility, given his acknowledgments of use of drugs and alcohol, drug dealing, instances of domestic violence, and prior stints in jail.

{¶23} Based on the foregoing, viewing the evidence in the light most favorable to the prosecution, it presented sufficient evidence on which to sustain Mr. Jordan's convictions if believed.  Moreover, nothing presented by Mr. Jordan gives us any doubt that the verdicts were not against the manifest weight of the evidence. A jury's decision to believe one witness's testimony over another does not render the verdict against the weight of the evidence, nor does this case present the rare set of facts in which the evidence weighs against conviction, requiring reversal.

D.

{¶24} In his fifth assignment of error, Mr. Jordan presents a blended argument asserting that the individual sentences constitute cruel and unusual punishment, while attacking the trial court's decision to run the rape sentences consecutively to each other. Mr. Jordan focuses on the sentences for the 12 rape convictions, where the trial court imposed 15-year-to-life terms to run consecutively and posits that "[he] only has one life to live, and to simply run all the life sentences consecutively runs afoul of the 8th amendment."

{¶25}  Both the United States and Ohio Constitution prohibit the imposition of cruel and unusual punishment. Eighth Amendment to the United States Constitution; Ohio Constitution, Article 1, Section 9.  Thus, a sentence may be invalidated as cruel and unusual punishment upon a showing that it is "grossly disproportionate" to the crime, or in other words "shocking to a reasonable person and the community's sense of justice." *State v. McRae,* 1st Dist. Hamilton No. C-180669, 2020-Ohio-773, ¶ 24, citing *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 13-14.  But the focus of this inquiry remains on each individual term rather than the effect of the aggregate sentence where terms are imposed consecutively to each other. *Id.*  Moreover, "[a] sentence that falls within the

terms of a valid statute generally cannot amount to cruel and unusual punishment."
*State v. Williams*, 2017-Ohio-8898, 101 N.E.3d 547, ¶ 31 (1st Dist.).

{¶26} Here, Mr. Jordan does not actually challenge the term of any individual sentence, but rather offers a variety of allegedly more palatable arrangements of his sentence terms. But our proportionality review here is limited to evaluation of each individual sentence. *Hairston* at ¶ 20 ("[P]roportionality review should focus on individual sentences rather than on the cumulative impact of multiple sentences imposed consecutively."). And review of each of Mr. Jordan's sentences confirms that they fall within the allowable statutorily prescribed limits. Mr. Jordan's rape convictions each carried a specification for victims under the age of ten, which allows for imposition of an indefinite 15-year-to-life sentence. *See* R.C. 2971.03(B)(1)(b). Under R.C. 2929.14(A)(3)(a), gross sexual imposition is a specific type of third-degree felony which allows for a maximum definite term of five years. Because each of Mr. Jordan's prison terms were within the statutorily allowed ranges, we find that they do not constitute cruel and unusual punishment.

{¶27} In sum, after careful review of the arguments presented on appeal and in light of the record and foregoing analysis, we accordingly overrule Mr. Jordan's five assignments of error. The judgment of the trial court is affirmed.

*Judgment affirmed.*

**MOCK, P.J.,** and **WINKLER, J.,** concur.

Please note:
The court has recorded its own entry this date.