[Cite as *Cleveland v. Simmons*, 2025-Ohio-1658.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND,  :

    Plaintiff-Appellee,  :

                                 No. 114109

    v.  :

ERNEST O. SIMMONS,  :

    Defendant-Appellant.  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** May 8, 2025

---

Criminal Appeal from the Cleveland Municipal Court
Case No. 2024-CRB-001449

---

### *Appearances:*

Mark Griffin, Cleveland Director of Law, Aqueelah Jordan, Chief Prosecutor, Angel Sanchez, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Thomas T. Lampman, Assistant Public Defender, *for appellant.*

EMANUELLA D. GROVES, P.J.:

{¶ 1} Defendant-appellant, Ernest Simmons ("Simmons"), appeals his convictions for resisting arrest and criminal trespass. For the reasons that follow, we reverse the decision of the trial court and remand for further proceedings.

## Factual and Procedural History

{¶ 2} Simmons was charged via complaint with resisting arrest under R.C. 2921.33(B), alleging that he caused physical harm to a law enforcement officer, a first-degree misdemeanor, and criminal trespass, a fourth-degree misdemeanor. At the arraignment on February 28, 2024, Simmons refused to identify himself to the court. The trial court continued the case for one day. The following day, the court verified his identity with court officers and completed the arraignment proceedings. At that time, Simmons refused assistance from the public defender assigned to the arraignment room. Accordingly, the trial court entered a not guilty plea on Simmons' behalf and continued the case for pretrial hearing.

{¶ 3} At a Zoom pretrial on March 7, 2024, Simmons asserted a desire to represent himself. The case was continued for an in-person hearing on March 26, 2024, at which Simmons again asserted that he wished to represent himself. The trial court asked if he attended law school. When Simmons denied attending, the court advised that he would be held to the same standards as an attorney. Simmons maintained a desire to represent himself. The trial court then handed Simmons a waiver-of-counsel form and advised him to read and sign it. The trial court did not directly address Simmons regarding the waiver or ascertain whether he understood his rights or the difficulties of self-representation at that time. After giving Simmons time to review the form, the trial court addressed Simmons again; briefly stated the charged offenses, the maximum penalties, and fines; and summarized the contents of the waiver form. Simmons asked if he could have an attorney review the form.

The trial court initially denied the request, but after discussion, the trial court continued the case for one week to allow Simmons to review the form himself or with an attorney.

{¶ 4} On April 2, 2024, the trial court called the case and asked Simmons to identify himself. Simmons identified himself as "the beneficiary of Ernest Simmons." The trial court asked Simmons to step up to the podium. Apparently, Simmons did not comply because the trial court asked again and informed Simmons that if he did not step up, the court would find him in contempt of court and take him into custody. After the trial court made its third request for Simmons to step up to the podium, the trial court ordered the bailiffs to take Simmons into custody. The court did not state the length of Simmons' jail term and the trial court's journal entry for that date merely stated: "Contempt — refused orders after repeated attempts to comply," and did not include a definite jail term. (Apr. 2, 2024, Journal Entry.)

{¶ 5} Simmons remained in jail until the next pretrial on April 24, 2024. At that time, the trial court noted that Simmons was still serving a sentence for contempt of court. Simmons reiterated his intention to represent himself on the underlying charges. The trial court informed him that he could represent himself if he signed the form "waiving all the rights" noting again that he would be held to the same standards as an attorney. Simmons expressed concern about language in the form that labeled him as "indigent," which the court ultimately removed. The court then proceeded to read the form into the record. The trial court did not address

Simmons personally regarding the waiver's contents or attempt to gauge his understanding of the waiver. When the trial court finished, Simmons stated that his constitutional rights were not read to him, but the trial court disagreed. Simmons then apologized and indicated he still would not sign the form and still wanted an attorney to look at it. After further dialogue, the trial court allowed Simmons to represent himself without signing the form. The trial court released Simmons from jail but informed him that he was still facing a contempt charge and the court would revisit punishment for contempt depending on how Simmons conducted himself going forward. The trial court continued the case for trial to May 9, 2024, over Simmons' objection.

{¶ 6} Between May 1 and May 8, 2024, Simmons filed four motions: a motion for discovery (May 1); a motion to continue the case (May 1); a motion requesting "to not be punished for a crime or slavery unless I am guilty" (May 2); and a request for all relevant parties to provide their oaths and licenses to practice law with a copy of the United States Constitution attached (May 8). With respect to the continuance, Simmons alleged that he needed a continuance of the trial because he had a doctor's appointment to address injuries sustained during his arrest. On the date of trial, Simmons told the court that he was not ready to go forward. He also questioned how the case could proceed without an identified victim. The trial court explained that Simmons wished to represent himself and was allowed to do so; however, it was not the court's responsibility to explain the law to him. Simmons then stated that he wanted a jury trial not a bench trial. When asked whether he had

filed a motion for a jury trial, Simmons acknowledged that he had not filed a motion. Simmons repeated his inquiries regarding the victim's identity and then asked about the court's jurisdiction. The trial court informed Simmons that the matter was within the Cleveland Municipal Court's jurisdiction. Simmons continued to question jurisdiction, essentially challenging venue and asserting a right to a jury trial. When the court informed him it intended to proceed with trial, Simmons accused the trial court of "railroading" him.

{¶ 7} The case proceeded to trial with Simmons acting pro se. The City of Cleveland (the "City") presented the following evidence. Witnesses from MetroHealth Hospital testified that Simmons entered the discharge hospitality center and asked the nurses stationed at the desk if he could use their bathroom, because the public bathroom smelled like a dead body. The nurses gave Simmons permission to use the bathroom. When he exited the bathroom, Simmons began talking to the nurses about obtaining a birth certificate for his niece's child. He believed he needed a short-form birth certificate because a long-form birth certificate would register the baby as a slave. The nurses did not understand what he meant and were increasingly uncomfortable with the conversation. They attempted to guide Simmons out of the area, but he continued to engage them in conversation and did not leave.

{¶ 8} One of the nurses went into Supervising Nurse Carly Coss' ("Coss") office and informed her of the situation. Coss approached Simmons and attempted to guide him out of the area. Coss did not feel threatened by Simmons, nor did she

describe him as belligerent. However, she was concerned about Simmons' refusal to leave. Coss eventually told Simmons she would call the police so they could investigate the smell coming from the public bathroom. Simmons replied that he did not need the police, but Coss told him she would call them anyway to investigate his concern.

{¶ 9} MetroHealth Police Sgt. Michael Starr ("Sgt. Starr") responded to Coss' call. Based on his understanding of the call, Sgt. Starr believed that a male refused to leave the discharge hospitality center. Upon arrival, Sgt. Starr and other officers attempted to engage Simmons in conversation. However, Simmons did not respond to the officers and ignored their efforts to engage him. Simmons continued to talk to Coss and the other nurses. Coss suggested that Simmons go with the officers to investigate the bathroom. After officers repeated requests that Simmons leave, Sgt. Starr informed Simmons that if he did not leave, he would be arrested for criminal trespass. Simmons continued to ignore the officers. Sgt. Starr placed his hand on Simmons' lower back. At that point, Simmons reached one arm over the counter and tightly gripped the edge. Simmons also began to flail his arms and became verbally abusive, calling the officers derogatory names and threatening their families. After a warning, an officer deployed a taser at Simmons. Simmons fell to the ground, taking Sgt. Starr with him. Sgt. Starr hit his head during the fall. Another officer injured his hand during the altercation; however, it is unclear from the record how he sustained that injury.

{¶ 10} The City rested, subject to the admission of the following exhibits: pictures of the officers' injuries, which were marked and identified by Sgt. Starr, and the nurses' statements, which were marked for identification but never shown to the witnesses[1] or identified during their testimony. When the trial court asked Simmons if he had any objection to the exhibits, Simmons attempted to move for dismissal. The trial court refused to address the motion and accepted all of the exhibits into evidence. Simmons did not present a case-in-chief.

{¶ 11} The trial court ultimately found Simmons guilty of the lesser included offense of resisting arrest, as a misdemeanor of the second degree, and guilty of the criminal-trespass charge.[2] The court also announced there would be no further penalty on the contempt-of-court charge.[3] At sentencing on June 11, 2024, the trial court imposed a $50 fine on each count plus court costs.

{¶ 12} Simmons appeals and assigns the following errors for our review.

### Assignment of Error No. 1

Simmons must be granted a new trial because the purported "waiver" of his right to counsel was equivocal, unclear, and never signed.

---

[1] Simmons did show one of the nurses her statement to refresh her recollection, but did not introduce it as an exhibit.

[2] The trial court's journal entries reflect that Simmons pleaded guilty to the charges and that the City amended the resisting-arrest charge to a misdemeanor of the second degree.

[3] Simmons did not appeal the finding of contempt of court.

## Assignment of Error No. 2

The trial court denied Simmons due process of law when it denied his requests for continuance and forced him to go to trial with only two weeks to prepare.

## Law and Analysis

{¶ 13} We begin with Simmons' second assignment of error because it is dispositive of this appeal. In the second assignment of error, Simmons argues that the trial court abused its discretion when it denied his motion to continue the trial. We agree.

{¶ 14} "The grant or denial of a continuance is a matter, which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). A court abuses its discretion when its conduct is unreasonable, arbitrary, or unconscionable. *State v. Beasley*, 2018-Ohio-16, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "[A]n arbitrary decision is one made 'without consideration of or regard for facts [or] circumstances.'" *Id.*, quoting *Black's Law Dictionary* (10th Ed. 2014).

{¶ 15} When deciding whether to grant a motion for continuance, a trial court must weigh "any potential prejudice to a defendant" against "concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Unger* at 67. A court considers the following objective factors when ruling on a motion for continuance:

"[T]he length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the [requesting party] contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case."

*State v. Hyche*, 2022-Ohio-1587, ¶ 34 (8th Dist.) (brackets in original), quoting *Unger* at 67-68.

{¶ 16} Notably, "'[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.'" *Unger* at 67, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). A court must look at the "'circumstances present in every case, particularly the reasons presented to the trial judge at the time the request is denied.'" *Id.*, quoting *Sarafite* at 589.

{¶ 17} A review of the circumstances reveals the denial of the motion for continuance was arbitrary. From the time the trial court released Simmons from jail, the case moved rapidly towards trial. On the day of his release, the trial court set a date for trial within two weeks. When Simmons questioned the date, the trial court refused to entertain the conversation and maintained that the trial date was May 9, 2024. Six days later on Wednesday, May 1, 2024, Simmons filed a motion to continue the trial, citing a doctor's appointment. The City filed a written opposition to the motion on May 6, 2024, noting that there had been several continuances already and that the trial subpoenas had been issued. Notably, the case had not been previously scheduled for trial. On the date of trial, the trial court did not address

Simmons' pending motion for continuance on the record, nor did Simmons raise his medical concerns, instead, the following discussion occurred:

> Court: Mr. Simmons' case is set for trial. Are you ready to go forward?
>
> Simmons: I don't understand how this case is set for trial with no victim, your Honor. That's why I (inaudible) a certified copy of the Constitution (inaudible) because I'm not even understanding how this court is even going forward. What is the name of my victim?
>
> Court: Sir, as I told you when you decided to represent yourself, it is not my job to educate you on the practices of law at all. The case is set for trial. The City, are you ready to go forward?
>
> City: Yes, your Honor.
>
> Court: The City is ready to go forward.
>
> Simmons: The defendant is not ready to go forward (inaudible).
>
> Court: That's not my problem. Sir, I offered you an attorney.
>
> Simmons: (Inaudible.)
>
> Court: I gave you counsel about an attorney . . . . I gave you counsel about an attorney. I warned you about protecting your rights. I warned you about having counsel to advise you of your rights; you denied them all. You even refused to sign notice that you had a right to an attorney.
>
> Court: I told you on the day of trial that you would be expected to go forward. So that's what's gonna happen today. You're gonna represent yourself as you declared to the Court that you were going to do and, the trial will go forward today. There is no reason for it not to.
>
> Simmons: So let me get this straight on the record. You're gonna force me to go to trial regardless of what I'm asking (inaudible) is what you're saying on the record?

(May 9, 2024, tr. 3-5.)

{¶ 18} When Simmons again repeated that he was not ready to go forward, the trial court responded that it was not "my issue."  The trial court consistently refused to address any concern Simmons' raised and referenced his failure to obtain legal counsel, dismissing his questions and refusing to address them.  Instead, the trial court declared it was not required to give Simmons legal advice.  After the trial court halted any conversation about a continuance, the City informed the court discovery was sent on April 25, 2024, and again on May 6, 2024, after Simmons filed a demand for discovery on May 1, 2024.  The court did not inquire whether Simmons had received the discovery.  The court referenced a seven-day deadline, suggesting that Simmons' discovery request was untimely, despite the fact that he filed the motion eight days before the date of trial.

{¶ 19} *Unger* requires the court to look at (a) "the length of the delay requested"; (b) whether the party has requested other continuances that were granted; (c) any "inconvenience to litigants, witnesses, opposing counsel and the court"; (d) whether the continuance is for legitimate reasons or whether it is "dilatory, purposeful, or contrived"; (e) whether the person asking for the continuance "contributed to the circumstances which gives rise to the request for a continuance"; and "any other relevant factors." *Unger* at 67-68.

{¶ 20} Here, Simmons did not state, and the trial court did not ask Simmons about, the length of delay he was requesting.  Further, the court did not ask Simmons the reason for the delay or explore Simmons' statement that he was not prepared to go forward, in order to determine whether the request was dilatory, purposeful, or

contrived. The relevant facts support a finding that the request was not dilatory, purposeful, or contrived. Simmons spent 22 days in jail, preventing him from requesting a jury trial, requesting discovery, or preparing for trial.

{¶ 21} The requested continuance was not unreasonable given that, at best, Simmons received discovery mere days before trial. *See State v. E.G.,* 2019-Ohio-3531, ¶ 7 (9th Dist.) (trial court abused its discretion when it denied counsel's motion to continue after counsel represented on date of trial that he was unprepared, when the trial court failed to inquire about counsel's level of unpreparedness); *State v. Reber,* 2018-Ohio-4016, ¶ 27 (7th Dist.) (request for continuance was not unreasonable given the State was still providing discovery mere days before trial, in addition to the volume of discovery, and the fact that the defense had not previously requested continuance of the trial). When an attorney requests a continuance because they are unprepared, a denial of the motion can have grave consequences. *E.G.* at ¶ 7. A denial of such a request may be "'so arbitrary as to violate due process.'" *Id.,* quoting *Sarafite,* 376 U.S. at 589.

{¶ 22} With respect to the inconvenience of the parties, arguably the trial court and the City were inconvenienced by Simmons' request for a continuance on the day of trial. However, neither the City nor the trial court raised inconvenience of the parties as a reason to deny Simmons' motion. *See Reber* at ¶ 27. Further, Simmons expressed concern over the trial date on the date it was set and filed a motion to continue a few days later. Accordingly, both the City and the court were aware that Simmons wanted to change the trial date.

{¶ 23} Additionally, we must weigh any inconvenience faced by the City and the court against the fact the trial court jailed Simmons for an indefinite sentence for contempt of court. When he was released, the trial court told Simmons, "Your contempt charges will remain pending depending on how you behave on May 9th." When Simmons expressed concern that the trial date was within a "small window," the trial court replied, "May 9th is your trial date. Goodbye." Simmons argues that his term in jail prevented him from obtaining timely discovery and exercising his right to request a trial by jury. Additionally, although Simmons never filed a jury demand, the record does not reflect that Simmons was advised he could request a jury trial. Any inconvenience to the parties was outweighed by Simmons' right to be prepared for trial.

{¶ 24} Finally, with respect to the factors that necessitated the continuance, arguably the single main factor for the continuance was the trial court's contempt sentence. In its responsive brief, the City points out that there were several continuances caused by Simmons' conduct, including his failure to identify himself and to approach the bench. While this accurately reflects the record, other continuances were simply a matter of procedure. On March 7, 2024, the pretrial hearing was held using Zoom, a video conferencing platform. Simmons indicated he wanted to represent himself, therefore, the trial court continued the case for an in-person hearing on March 26, 2024. Simmons then requested a continuance to seek advice about the waiver-of-counsel form. At the following hearing, Simmons was held in contempt of court, jailed for an indefinite period, which ended after 22

days, and released on April 24, 2024. On that date, the trial court scheduled trial for May 9, 2024. Prior to the April hearing, no trial date had been scheduled. On the date of trial, Simmons noted he was not prepared to go forward, that he wanted a jury trial not a bench trial, and questioned the court's authority to hear the matter. Importantly, the trial court did not entertain Simmon's questions, or question Simmons' statement that he was not prepared, nor did it determine when Simmons had obtained discovery. Other than the trial court's statements regarding Simmons' failure to accept appointed counsel, the record is devoid of any other reason the trial court refused to grant a continuance in these circumstances to ensure Simmons was adequately prepared for trial. *See Cleveland v. Henderson,* 2018-Ohio-2187, ¶ 21 (8th Dist.) (trial court abused its discretion when it denied motion to continue when new counsel who had not met the defendant and was clearly unprepared appeared for trial); *Columbus v. Dalton*, 1979 Ohio App. LEXIS 11965, at ¶ 4 (10th Dist. Jan. 30, 1979) (noting that "preparation is the primary key to excellence in advocacy and that if counsel is denied a reasonable opportunity to prepare, prejudice is presumed.").

{¶ 25} Given the foregoing, the trial court's decision to deny Simmons' motion for a continuance was an abuse of discretion. Accordingly, the second assignment of error is sustained. The first assignment of error is therefore rendered moot.

{¶ 26} Judgment reversed, and case remanded for a new trial.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EMANUELLA D. GROVES, PRESIDING JUDGE

MARY J. BOYLE, J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, J., DISSENTING:

{¶ 27} I respectfully dissent. To say that Simmons is a difficult defendant to deal with appears to be an understatement. Despite his reluctance to admit to it, Simmons uses language and frivolous arguments consistent with "sovereign citizens." The reason the municipal court judge "quickly lost her temper with Simmons," according to Simmons' take on the matter, is because he refused to identify himself as anything other than "the beneficiary" before declaring that the "Court is a fraud." Tr. 2:11-14; s*ee State v. Jordan*, 2020-Ohio-4447, ¶ 9 (1st Dist.). That language is generally used by self-described "sovereign citizens." *Id.* (noting the defendant's invocation of "sovereign citizen" status by expressing his belief that the court was a fraud and his desire to be called "the beneficiary" rather than identifying himself).

{¶ 28} Defendants, attempting to hide behind the curtain of a long-discredited legal ideology, cannot be given a second chance when their nonsensical antics frustrate and complicate a trial proceeding. S*ee SoFi Lending Corp. v. Williams*, 2024-Ohio-1166, ¶ 21 (8th Dist.) (string citing cases concluding that "sovereign citizen" arguments are frivolous and meant only to frustrate the efficient administration of judicial matters). As one panel aptly noted: "[s]ometimes, with 'sovereign citizens' who seem to delight in obfuscation, a court can do no more" than try to explain the realities of the judicial system. *Jordan* at ¶ 11. At a certain point, however, the show must go on.

{¶ 29} Simmons systematically refused to identify himself to the court and declared that he was not accepting legal representation. He also refused to sign the waiver-of-counsel form because he does not believe in the existence of the United States of America or the jurisdiction of the courts. This dilatory behavior came to a head during the mid-April hearing. When the judge was asking Simmons to sign the waiver-of-counsel form, he continually talked over the judge, who was attempting to explain the waiver form to him. Simmons began playing games, expressing a desire to have an attorney review the waiver form despite not wanting an attorney to represent him in the proceeding. The municipal court indulged Simmons at that time, giving him the benefit of one more doubt and offering him a week for further review.

{¶ 30} Upon returning to court, Simmons again refused to identify himself as anything other than "the beneficiary." He was held in contempt for his refusal to

answer the municipal court's question.[4]  At the next pretrial proceeding, Simmons remained steadfast in his refusal to sign the waiver-of-counsel form or to accept legal representation.  The court proceeded to read the waiver on the record, which included an explanation of the charges and accepted Simmons' conduct as a valid waiver.  The trial date was set for two weeks later, a date more than two months after Simmons' initial appearance.

{¶ 31}  At trial, Simmons claimed that he was unable to proceed but failed to explain why nothing was prepared despite the trial date being more than two months after his initial appearance.   His sole argument as to his preparedness at that time was the lack of a victim or the court's jurisdiction over him.  Tr. 46:13-47:9 Simmons also complained that he never "asked for a bench trial" and could not have filed a request for a jury trial because he was held in jail for 20 days, out of the approximately 70 days between his initial appearance and the trial.  Tr. 48:7-21 Simmons had ample time to prepare his case, and any delay was due to his self-imposed purgatory of refusing to waive or accept legal counsel.

{¶ 32}  This case should have been simple, but Simmons' behavior and general obstinance contributed to the alleged errors he now claims deprived him of due process.  Even if the existence of error were presumed, invited error cannot form the basis of reversing the conviction.  *State v. Garrett*, 2022-Ohio-4218, ¶ 203, citing

---

[4] Simmons has never appealed the finding of contempt, and it is not an issue he raised in this appeal.

*Hal Artz Lincoln-Mercury Inc. v. Ford Motor Co. Lincoln—Mercury Div.*, 28 Ohio St.3d 20 (1986).

{¶ 33} Notwithstanding, the trial court did not abuse its discretion in denying the dilatory request to continue the trial date. "When ruling on a motion for continuance, the trial court must weigh 'any potential prejudice to a defendant' against 'concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.'" *State v. Stewart*, 2024-Ohio-5802, ¶ 41 (8th Dist.), quoting *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). Appellate review does not focus on the defendant's concerns alone, and the general claim that a defendant lacked discovery is generally not sufficient to demonstrate error in the denial of a continuance without any details as to the content of discovery needed to defend the case. *State v. Ligon*, 2003-Ohio-3257, ¶ 17 (8th Dist.). Abuse of discretion is a stringent standard to meet, and it does not permit an appellate panel to substitute its judgment for that of the trial court. *Stewart* at ¶ 40, citing *State v. McFarland*, 2022-Ohio-4638, ¶ 21 (8th Dist.), and *Vannucci v. Schneider*, 2018-Ohio-1294, ¶ 22 (8th Dist.).

{¶ 34} Simmons' dilatory behavior in presenting frivolous arguments to the municipal court, at best, invited any errors with respect to waiver of counsel or the lack of a continuance of the trial date. Notwithstanding, I cannot conclude the court abused its discretion in attempting to marshal the case through trial in the most efficient manner possible in light of Simmons' theatrics. Accordingly, I would affirm.